HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHRISTOPHER DISNUTE, PHILLIP
CURRIE, and P.C., a minor,

           Plaintiffs,

    v.

CITY OF PUYALLUP et al.,

           Defendants.

No. 3:10-cv-05295-RBL

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
[Dkt. #13]

THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment [Dkt. #13]. The dispute arises from an encounter between two City of Puyallup police officers and three African American individuals fishing on a public dock near Bradley Lake Park in Puyallup, Washington. After review, the Court grants Defendants' motion.

**I. BACKGROUND**

Plaintiff Christopher Disnute arrived at Bradley Lake on a late July morning in 2009 to spend the day fishing from a public dock. Pls.' Response at 2 [Dkt. #17]. He was soon joined by Plaintiff Phillip Currie and his minor son, P.C., who had never before met Mr. Disnute. *Id.* The three individuals engaged in polite conversation while Mr. Currie taught his son how to cast. *Id.* The fishing expedition ended prematurely, however, when two uniformed police officers

mistakenly informed the anglers that only adults could fish in Bradley Lake. Defs.' Mot. at 1 [Dkt. #1].

Officers Temple and Davis of the City of Puyallup Police Department engaged the Plaintiffs in conversation after making a routine sweep of Bradley Lake Park, an area known to conceal unregistered sex offenders, outstanding warrant subjects, and shoplifters fleeing nearby retail establishments. *Id.* at 4. Officer Temple walked out on the dock and asked the two men where they were from and if they had fishing licenses as a means to identify the individuals. *Id.* at 5. Mr. Currie took issue with the way Officer Temple asked these initial questions because it appeared Officer Temple assumed the three individuals traveled together or at least knew each other. Pls.' Response at 3 [Dkt. #17]. Mr. Currie stated, "sir, we're not together; please don't assume we're together just because we're two African Americans fishing together on a dock." *Id.* at 4. The substance of the subsequent conversation is disputed, but in any event the officers checked the police database for any outstanding warrants and both men came back clear. Decl. of David Temple at 3 [Dkt. #15]. Officer Temple then erroneously informed the Plaintiffs that Bradley Lake was a "youth only" fishing area, and they packed up their gear and left the lake. *Id.*

Mr. Currie was particularly upset with the encounter because the officers did not appear to check any other fisherman's license, and he had seen at least two white families fishing on the other side of the lake. Pls.' Response at 6 [Dkt. #17]. In addition, Mr. Currie was certain that the "youth only" fishing restriction was no longer in effect. *Id.* at 5. He exchanged phone numbers with Mr. Disnute. *Id.* at 6. When he got home, Mr. Currie called the City of Puyallup's parks and recreation officials and confirmed he could lawfully fish in Bradley Lake as long as he

had a valid license. *Id.* Mr. Currie then contacted the police department to discuss the way he had been treated, and he was directed to file a formal, written complaint. *Id.*

Captain Dave McDonald met with both Mr. Currie and Mr. Disnute and conducted an investigation to determine whether Officer Temple's conduct violated the city's policy against race-based policing. Defs.' Mot. at 7 [Dkt. #13]. He concluded race did not play a role in the incident after learning the officers contacted Plaintiffs because they were in close proximity to the wooded area known to harbor criminals; the other white fishermen were in an area of the lake separated from the woods, several hundred yards away; the heat in July had exhausted Officer Temple, who was on bicycle patrol; and the officers did not conduct their patrol in order to enforce fishing regulations. *Id.* at 7–8.

Plaintiffs subsequently filed this lawsuit. They allege civil rights violations pursuant to 42 U.S.C. § 1983, as well as harassment, invasion of privacy, unlawful detention, discrimination in public accommodations, negligence, negligent hiring and supervision, negligent infliction of emotional distress, and intentional infliction of emotional distress. Pls.' Compl. at 5 [Dkt. #1]. Defendants move for summary judgment. [Dkt. #13].

## II. ANALYSIS

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the nonmoving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient." *Triton Energy Corp. v.*

*Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

### A. Civil Rights Claim Under § 1983

42 U.S.C. § 1983 provides a civil action for persons that are deprived of their constitutional rights by another acting under color of state law. A municipality cannot be held liable for damages under 42 U.S.C. § 1983, however, "for an injury inflicted solely by its agents or employees." *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 693 (1978). Because, as Plaintiffs concede, there is no evidence that the officers acted to execute the city's policy or custom, the § 1983 claims alleged against the City of Puyallup and the Puyallup Police Department must be dismissed. *See* Pls.' Response at 13–14 [Dkt. #17].

With respect to Officers Temple and Davis, personal liability may be established under § 1983 if the officers acted under color of state law and caused the deprivation of a federal right. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The officers do not dispute that they acted under color of state law when they asked Plaintiffs for identifying information in police uniform; thus, the question presented is whether the officers deprived Plaintiffs of a federal right, specifically the right to be free from unlawful seizure. *See* U.S. Const. amend. IV.

Defendants first argue that the remaining § 1983 claims against Officers Temple and Davis should be dismissed because they are not named parties. Defs.' Reply at 2 [Dkt. #20]. This argument is a matter of semantics, however, because the officers are individually named in

paragraphs 1.5 and 1.6 of Plaintiffs' First Amended Complaint for Damages. [Dkt. #1]. *See Hoffman v. Halden*, 268 F.2d 280, 303–04 (9th Cir. 1950) ("[T]he caption of an action is only the handle to identify it and ordinarily the determination of whether or not a defendant is properly in the case hinges upon the allegations in the body of the complaint and not upon his inclusion in the caption."), *overruled on other grounds by Cohen v. Norris*, 300 F.2d 24 (9th Cir. 1962).

Defendants' second and more persuasive argument is that the officers never seized the Plaintiffs. The Supreme Court has repeatedly affirmed that "mere police questioning does not constitute a seizure." *Florida v. Bostick*, 501 U.S. 429, 434, 437 (1991) (noting a seizure occurs when a law enforcement officer restricts a person's liberty, either by physical force or a showing of authority). Plaintiffs assert that the officers restricted their liberty by blocking their exit from the public dock, by using a tone that suggested compliance would be compelled, and by failing to inform Plaintiffs they were free to terminate the encounter. Pls.' Response at 11–12 [Dkt. #17].

A citizen's encounter with police officers does not offend the principles of the Fourth Amendment "unless [the encounter] loses its consensual nature." *United States v. Drayton*, 536 U.S. 194, 201 (2002). Plaintiffs' deposition testimony reveals that this encounter remained consensual. Both men complied with the officers requests for information and voluntarily provided their names and dates of birth. Defs.' Mot. at 10–12 [Dkt. #13]. The officers did not touch, arrest, or detain Plaintiffs, nor did they threaten to use force if Plaintiffs refused to comply with their requests. Defs.' Mot. at 10–12 (citing deposition testimony from Mr. Currie and Mr. Disnute) [Dkt. #13]. While the officers did mistakenly inform Plaintiffs about the fishing regulations on Bradley Lake, and it is unfortunate that their fishing excursion ended abruptly, the officers' conduct did not constitute a seizure protected by the Fourth Amendment. Accordingly, the officers are entitled to summary judgment as of matter of law.

## B. Plaintiffs' State Law Claims Fail as a Matter of Law

Plaintiffs have generally alleged a number of causes of action under Washington law. First, Washington expressly prohibits discrimination on the basis of race or national origin in public accommodations. Wash. Rev. Code 49.60.030. A claimant must establish four elements to present a prima facie case for discrimination: (1) that the claimant is a member of a protected class; (2) that the establishment is a place of public accommodation; (3) that the government discriminated against the claimant by treating him differently from persons outside the class; and (4) that the claimant's protected status was a substantial factor causing discrimination. *Demelash v. Ross Stores, Inc.*, 20 P.3d 447, 456 (Wash. Ct. App. 2001). The Court concludes the officers did not target Plaintiffs for questioning on account of their race. The officers had just conducted a routine sweep of an area known to harbor criminals, and the public dock was adjacent to this area. Defs.' Mot. at 3–4 [Dkt. #13]. Moreover, the officers were not engaged in a patrol to enforce fishing regulations and had no reason to circumnavigate the lake to establish the identity of each person fishing that day. *Id.* at 6. If other white fishermen had been on the public dock, and the officers only questioned the African American fishermen, the evidence would suggest the officers discriminated on account of race. But under the circumstances, Plaintiffs have failed to show that their protected status was a substantial factor in causing disparate treatment between themselves and other fishermen.

Second, Plaintiffs allege that the officers acted negligently, or that the city acted negligently in hiring, training, and supervising the officers. Pls.' Response at 18 [Dkt. #17]. The city has admitted agency for this purpose; thus, the negligent training, hiring, and supervising claims are "immaterial" because these causes of action apply only when an employee acts outside the scope of employment. *Shielle v. Hill*, 287 P.2d 479, 480–81 (Wash. 1955). In order

to establish negligence, Plaintiffs must show the existence of a duty owed to individuals, rather than the general public, a breach of that duty, and proximate causation. *See Hartley v. State*, 698 P.2d 77, 85 (Wash. 1985). Absent a "special relationship" between a police officer and an individual, the police officer owes no duty to the individual under the public duty doctrine. *Coffel v. Clallam Cnty.*, 735 P.2d 686, 690 (Wash. Ct. App. 1987) (noting a special relationship arises if there is some form of privity between the police department and the victim that sets the victim apart from the general public, and there are explicit assurances of protection that give rise to reliance on the part of the victim). There is no evidence that a special relationship exists between Officers Temple and Davis and Mr. Currie or Mr. Disnute; therefore, traditional negligence principles do not reach the officers under the public duty doctrine.

Third, Plaintiffs allege intentional infliction of emotional distress, or outrage, and negligent infliction of emotional distress. Pls.' Response at 21 [Dkt. #17]. The common law tort of outrage has three elements: (1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress. *E.g.*, *Dicomes v. State*, 782 P.2d 1002, 1012 (Wash. 1989). The defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in the civilized community." *Grimsby v. Samson*, 530 P.2d 291, 295 (Wash. 1971) (quoting Restatement (Second) of Torts § 42 cmt. d (1965)). The conduct of Officers Temple and Davis was not so outrageous as to stretch the bounds of human decency and to be regarded as "utterly intolerable." Because reasonable minds could not differ on whether the officers' conduct was "sufficiently extreme to result in liability," summary judgment is appropriate. *See Robel v. Roundup Corp.*, 59 P.3d 611, 619 (Wash. 2002) (internal quotation marks omitted); *see also Kloepfel v. Bokor*, 66 P.3d 630,

632 (Wash. 2003) ("[T]he tort of outrage 'does not extend to mere insults, indignities, threats, annoyances, petty oppressions, and other trivialities.'" (quoting *Grimsby*, 530 P.2d at 295)).

Plaintiffs' claim for negligent infliction of emotional distress also fails because Plaintiffs lack "objective symptomology" that is susceptible to medical diagnosis and proven by medical evidence. *E.g.*, *Hegel v. McMahon*, 960 P.2d 424, 431 (Wash. 1998); *Brower v. Ackerley*, 943 P.2d 1141, 1147 (Wash. Ct. App. 1997). *Kloepfel* abandoned the objective symptomology requirement for outrage cases but affirmed its application in negligent infliction of emotional distress cases. 66 P.3d 633–34. Mr. Currie testified he has been treated by a psychotherapist since the incident, Decl. of Richard Jolley at 11–12, but he provides no objective medical diagnosis to prove he suffers from anxiety some "other disabling mental condition." *Hegel*, 960 P.2d at 431.

Fourth, Plaintiffs allege Officers Temple and Davis invaded their privacy by intrusion. Pls.' Response at 22 [Dkt. #17]. This common law cause of action arises when a person deliberately and unreasonably intrudes into another person's private affairs. *Fisher v. State* ex rel. *Dept. of Health*, 106 P.3d 836, 840 (Wash. Ct. App. 2005). Plaintiffs argue the officers invaded their private solitude by authoritatively approaching Plaintiffs with the intent of preventing them from fishing. Pls.' Response at 23 [Dkt. #17]. There is no evidence the officers intended to prevent Plaintiffs from fishing and unreasonably intrude into their private affairs; in fact, the evidence shows the officers intended to identify the fishermen as part of their sweep of the Bradley Lake woods. "Intent is . . . an essential element" of invasion of privacy by intrusion, and it is lacking here. *Fisher*, 106. P.3d at 840.

Finally, Plaintiffs' ancillary common law claims also lack merit and are unsupported in the pleadings and filings.

## III. CONCLUSION

For the reasons stated above, the City of Puyallup, its police department, and individual officers Temple and Davis have satisfied their initial burden for summary judgment. Plaintiffs have failed to present, by affidavits, depositions, answers to interrogatories, or admission on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. Therefore, Defendants' Motion for Summary Judgment [Dkt. #13] is GRANTED.

**IT IS SO ORDERED**.

DATED this 12th day of April, 2012

_____
Ronald B. Leighton
United States District Judge